IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| NAUTILUS INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 05 C 3813 |
| SITE RECOVERY SERVICES, INC., et al. | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER- YEGHIAYAN

This matter is before the court on Plaintiff Nautilus Insurance Company's ("Nautilus") motion for summary judgment and on Defendant Site Recovery Services, Inc.'s ("SRS") motion for summary judgment. For the reasons stated below, we grant Nautilus' motion for summary judgment and we deny SRS's motion for summary judgment.

## BACKGROUND

Nautilus alleges that Defendant Michael D. Shorter ("Shorter") owns property located in South Stony Island, Chicago, Illinois, that is divided into six lots ("Property"). In February 2002, Shorter allegedly entered into a lease agreement

1

("Lease") with KFC Corporation ("KFC"), under which KFC leased three of the six lots ("KFC Lots"). According to Nautilus, at the time of the execution of the Lease, the parties contemplated that KFC would demolish an existing building that spanned the KFC lots and one of the other non-KFC lots ("Building") and that KFC would pay Shorter $100,000.00. However, Nautilus also contends that Shorter intended to relocate the Building to the three lots of the Property other than the KFC Lots, rather than have it demolished. The Lease also allegedly specifically provided that the KFC lots were not to be made available to KFC for possession until Shorter substantially completed the Building relocation, which had to occur no later than May 30, 2002. As of December 2003, Shorter had allegedly failed to relocate the Building and KFC sent him a letter threatening legal action. KFC allegedly contacted Shorter again and offered to amend the Lease to include new deadlines for the payment to Shorter and the date for possession. In August 2004, KFC allegedly placed in escrow with Defendant Chicago Title Land Trust Company ("Chicago Title") $100,000.00, and contacted Shorter, asking him to execute documents to effectuate a closing on the Lease transaction. Shorter allegedly refused to execute any such closing documents.

In September 2004, agents of SRS and other third parties allegedly entered the Property and demolished the Building without providing any notice to Shorter. The demolition also allegedly caused electrical service to be disconnected to the non-KFC lots on the Property, which were allegedly occupied for use as a construction staging area, dumping ground, and parking area for construction workers. Shorter

and Chicago Title subsequently brought a legal action in the Circuit Court of Cook County, Illinois, against KFC, SRS, and the other parties responsible for the demolition ("Shorter Action").

Prior to the demolition of the Building, Nautilus had issued a "Commercial Lines Policy" to SRS ("Policy"). Nautilus contends that the claims brought by Shorter and Chicago Title in the Shorter action are not covered by the Policy. Accordingly, Nautilus contends that it has no duty to defend SRS in the Shorter action. Nautilus brought the instant action seeking a declaratory judgment stating that Nautilus has no duty to defend or indemnify SRS in the Shorter action. SRS has filed a counterclaim in the instant action, alleging that Nautilus has retained counsel for SRS in the Shorter action and that the counsel has already proceeded forward with the defense in the Shorter action. SRS seeks in its counterclaim a declaratory judgment by the court stating that Nautilus does in fact have a duty to defend and indemnify SRS in the Shorter action.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

Under Illinois law, in order to determine whether an insurer has a duty to defend, the "allegations in the underlying complaint" should be compared "to the relevant provisions of the insurance policy." *LaGrange Memorial Hosp. v. St. Paul Ins. Co.*, 740 N.E.2d 21, 26-27 (Ill. App. Ct. 2000)(citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)). An insurer has a duty to defend under a policy if the allegations that are included in the underlying complaint: 1) "fall within" the provisions of the insurance policy, or 2) are "potentially within, the policy's coverage . . . ." *Outboard Marine Corp.*, 607 N.E.2d at 1212(stating that a "[r]efusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage").

The construction of the provisions of an insurance policy is a question of law. *Id.*; *Sokol and Co. v. Atlantic Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005). When construing the provisions of a policy, a court must consider: 1) "the intent of the parties to the contract," 2) "construe the policy as a whole," 3) and "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Outboard Marine Corp.*, 607 N.E.2d at 1212; *Sokol and Co.*, 430 F.3d at 420; *Geschke v. Air Force Ass'n*, 425 F.3d 337, 342 (7th Cir. 2005)(stating that "[i]n Illinois, an insurance policy is treated as any other contract and is subject to the same rules of construction"). Words in the policy that are unambiguous should be given their "plain, ordinary, and popular meaning." *Outboard Marine Corp.*, 607 N.E.2d at 1212; *Sokol and Co.*, 430 F.3d at 420; *Geschke*, 425 F.3d at 342. If a word in the policy could be reasonably afforded "more than one reasonable

5

interpretation," the word is ambiguous and should "be construed in favor of the insured and against the insurer who drafted the policy." *Outboard Marine Corp.*, 607 N.E.2d at 1212; *Sokol and Co.*, 430 F.3d at 420; *Geschke*, 425 F.3d at 342(quoting *Allstate Ins. Co. v. Smiley*, 659 N.E.2d 1345, 1350 (1995) for proposition that "a court should not search for an ambiguity where there is none" and that "[t]he determination of whether the terms of an insurance policy are ambiguous is made by reference to a reasonable person standard," which means "what a reasonable person in the position of the insured would understand [the terms] to mean"); *Premcor USA, Inc.*, 400 F.3d at 526(quoting *Transamerica Ins. Co. v. South*, 975 F.2d 321, 327 (7th Cir. 1992) for the proposition that "[a]ll the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists").

In the instant action, Nautilus argues that the demolition falls within an exclusion in the Policy and accompanying endorsement, which provides:

> This insurance does not apply to 'bodily injury,' 'property damage,' 'personal and advertising injury' or medical payments arising out of the partial or total demolition of any building or structure *not specifically scheduled in the Declarations or added by endorsement prior to the start of the demolition project.*

("Unscheduled Demolition endorsement")(Pol. End. S105, 04/99)(emphasis added). Nautilus claims that the Building demolition was not scheduled in the Declarations of the policy or added by endorsement and is therefore not covered by the Policy.

6

## I. Inconsistent Theories by Nautilus

SRS responds to Nautilus' invocation of the Unscheduled Demolition endorsement provision by arguing that Nautilus is pursuing inconsistent arguments in its motion for summary judgment. SRS contends that on the one hand, Nautilus claims that SRS trespassed on Shorter's property and SRS should not have demolished the building, and on the other hand SRS should have also scheduled the demolition of the Building or added the demolition by endorsement, which would have been a trespass. SRS argues that Nautilus' two theories are incompatible because SRS could not have listed in the Policy a future trespass on Shorter's property. However, SRS' argument fails to explain why the two issues necessarily relate to each other. Whether SRS trespassed on Shorter's property and should not have demolished the building has no relevance in regard to the inquiry of whether prior to the demolition, SRS listed the demolition project in the Declaration or added it by endorsement to the Policy. SRS could have listed the demolition of the Building in the Policy prior to the demolition, mistakenly believing that it had proper authorization to proceed and subsequently discovered it had trespassed on the Property. Thus, we do not agree with SRS' argument that Nautilus is relying on inconsistent theories regarding the Unscheduled Demolition endorsement.

## II. Ambiguity of Unscheduled Demolition Endorsement

SRS also argues that the Unscheduled Demolition endorsement provision is

7

ambiguous. SRS fails to offer a detailed explanation of its position and merely points to another exclusion of coverage in the Policy for "demolition and building wrecking" ("Wrecking endorsement"). (Pol. End. S058, 08/93). The Wrecking endorsement states that the Policy does not apply to injury or damage "for demolition or wrecking of buildings or structures conducted by [SRS] unless coverage was purchased for 'Wrecking-building or structures' and designated on the Declarations . . . ." (Pol. End. S058, 08/93). SRS claims that the Wrecking endorsement is somehow inconsistent with the exclusion in the Unscheduled Demolition endorsement provision and that the Unscheduled Demolition endorsement provision is ambiguous. However, SRS fails to logically explain why the two provisions are inconsistent or why the Unscheduled Demolition endorsement provision is ambiguous. The Unscheduled Demolition endorsement provision clearly and unequivocally states that in order for the Policy to cover the demolition of a building, the building would need to be "specifically scheduled in the Declarations or added by endorsement prior to the start of the demolition project." (Pol. End. S105, 04/99). Therefore, the Unscheduled Demolition endorsement provision is not ambiguous.

## III. Whether the Demolition was Scheduled or Included in Endorsement

Nautilus contends that the Building demolition is not scheduled in the declaration of the Nautilus policy or added by endorsement in the Nautilus policy. The Policy and endorsements which have been provided to the court as exhibits supports Nautilus' position. SRS fails to respond to Nautilus' contention and does

8

not argue that the Building demolition was scheduled in the declaration of the Policy or added by endorsement. Instead, SRS attempts to avoid this issue by contending that the Unscheduled Demolitions endorsement is ambiguous or inconsistent with other provisions. Since SRS failed to act diligently and include the Building demolition project in the Policy prior to demolition, the Unscheduled Demolition endorsement provision is applicable and the Policy does not cover the demolition. Therefore, based on all of the above, we grant Nautilus' motion for summary judgment and deny SRS' motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Nautilus' motion for summary judgment and we deny SRS' motion for summary judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 28, 2006